UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00210-FDW
(3:08-cr-00097-FDW)

| | | | |
|---|---|---|---|
| **KELVIN GERARD MOSS,** | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| vs. | ) | **MEMORANDUM OF** | |
| | ) | **DECISION AND ORDER** | |
| | ) | | |
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| Respondent. | ) | | |
| | ) | | |

**THIS MATTER** is before the Court on the Fourth Circuit Court of Appeals' grant of a joint motion for remand of this case for further proceedings [CV Doc. 20][1] and the Government's motion for leave to file a supplemental response to Petitioner's motion to vacate [CV Doc. 23]. The Fourth Circuit vacated this Court's Order denying Petitioner's motion to vacate under 28 U.S.C. § 2255 and instructed the Court that it "must decide whether any defense to Moss's petition is waivable." [CV Doc. 20 at 1].

I.  **BACKGROUND**

On the morning of April 15, 2008, Petitioner Kelvin Gerard Moss ("Petitioner") was serving a term at the McLeod Addictive Disease Center in Charlotte, North Carolina. [CR Doc. 81 at ¶ 10: Presentence Investigation Report (PSR)]. The McLeod Center gave Petitioner and another resident, Shonn McCain, passes to search for jobs. [Id.]. Rather than search for jobs, Petitioner and McCain robbed the Mooresville Savings Bank in Huntersville, North Carolina. [Id.

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:16-cv-00210-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:08-cr-00097-FDW-1.

at ¶ 9]. Petitioner brandished a pump shotgun with a pistol-grip handle and pointed the gun at bank employees. McCain ordered a bank teller to accompany him into the vault and unlock two safes. He placed cash from both safes into a duffel bag, while Petitioner ordered the other employees to lie on the floor. Before leaving, Petitioner ordered all the employees into the vault, and McCain took a cell phone from the bank manager. [Id.]. Petitioner and McCain closed the vault door and fled in a white Cadillac. [Id. at ¶¶ 9-10]. Police caught up with them and pursued the Cadillac. [Id. at ¶ 10]. McCain drove the car across the median into a lane of oncoming traffic before crashing into another car. [Id.]. Petitioner and McCain then fled the vehicle on foot. Police found Petitioner's shotgun in the car, along with the bank manager's cell phone and the bag of stolen cash. Petitioner did not return to the McLeod Center. Police located him two days later. [Id. at ¶¶ 10-11].

On September 24, 2008, Petitioner was charged in a First Superseding Bill of Indictment with one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 2 (Count One); one count of using and carrying a firearm brandished during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) (Count Two); one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three); and one count of escape from custody in violation of 18 U.S.C. §§ 751(a) and 4082 (Count Four). [CR Doc. 34].

Before trial, the Government filed an Information pursuant to 21 U.S.C. § 851 and 18 U.S.C. § 3559(c)(4) setting forth Petitioner's prior felony convictions.[2] [CR Doc. 59: § 851 Information]. The Information identified the following qualifying predicate offenses: Petitioner's

---

[2] Under the "three-strikes" statute, any person federally convicted of a "serious violent felony" must be sentenced to life imprisonment if such person has been convicted "on separate prior occasions" of "(i) 2 or more serious violent felonies; or (ii) one or more serious violent felonies and one or more serious drug offenses[.]" 18 U.S.C. § 3559(c)(1)(A). Under § 3559(c)(1)(B), each such predicate offense "other than the first offense" must be "committed after the defendant's conviction of the preceding serious violent felony or serious drug offense." 18 U.S.C. § 3559(c)(1)(B).

2

1992 North Carolina conviction for breaking and entering a dwelling, his 1994 North Carolina conviction for second-degree murder, and his 1995 federal conviction for drug trafficking conspiracy. [Id.]. On January 14, 2009, the jury found Petitioner guilty on all four counts. [CR Doc. 65: Jury Verdict].

Before sentencing, a probation officer submitted a PSR. [CR Doc. 81]. Before considering enhancements under the Armed Career Criminal Act (ACCA)[3] or the career offender guideline,[4] the probation officer recommended a combined adjusted offense level of 24 for Counts One, Three, and Four. [Id. at ¶ 45]. The probation officer, however, found that Petitioner had four qualifying prior convictions, including a conviction for assault with the deadly weapon and the same breaking and entering, second-degree murder, and drug trafficking conspiracy convictions, that triggered an enhancement under the ACCA, resulting in an offense level of 37. [Id. at ¶ 46 (citing U.S.S.G. §4B1.4(b)(2))]. The probation officer also found, based on the same second-degree murder and drug convictions, that Petitioner was a career offender under U.S.S.G. §4B1.1, also resulting in an

---

[3] The ACCA mandates a 15-year minimum sentence (and a maximum of life in prison) for any defendant who violates 18 U.S.C. § 922(g) and who has three previous convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). When Petitioner was sentenced a "violent felony" was defined to include any crime punishable by a term of imprisonment exceeding one year that:

>  (i) has an element the use, attempted use, or threatened use of physical force against the person of another [the "force clause"]; or
>
>  (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated offense clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"].

Id. § 924(e)(2)(B). Without armed career criminal status, the mandatory maximum penalty for violation of § 922(g) is ten years. 18 U.S.C. § 924(a)(2).

[4] Under U.S.S.G. §4B1.1(a), a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. §4B1.1(a).

3

offense level of 37. [Id. at ¶ 47]. The recommended total offense level for Counts One, Three, and Four was, therefore, 37, and Petitioner's Criminal History Category was VI. [Id. at ¶¶ 49, 67]. After adding the mandatory minimum consecutive penalty required by 18 U.S.C. § 924(c) for Count Two to the minimum and maximum of the otherwise applicable guideline range of 360 months to life, the resulting guideline range was 444 months to life. [Id. at ¶ 51]. The probation officer concluded that, under the three-strikes statute, 18 U.S.C. § 3559(c), there were mandatory life terms for Counts One and Three and a mandatory consecutive life term for Count Two. [Id. at ¶ 90]. Based on these statutory minimums, the recommended guideline range was life in prison.[5] [Id. at ¶ 91].

At sentencing, the Court concluded, contrary to the PSR, that a violation of § 922(g) was not a "serious violent felony" under 18 U.S.C. § 3559(c)(2)(F)(i)[6] and, as such, held that Count Three did not require a life sentence, but rather a term of 15 years to life under the ACCA. [CR Doc. 104 at 71-73: Sentencing Tr.]. The Court further concluded that, because the sentences for Counts One and Two had to be life and consecutive life, respectively, under the three-strikes statute, the guidelines sentence also had to be life plus consecutive life.[7] [Id. at 76]. The Court considered all the § 3553(a) sentencing factors and explained to Plaintiff as follows:

> Your offense in this case was highly reckless and dangerous. Not only did you commit a violent bank robbery where a firearm was present in the bank robbery, you also were involved in a road

---

[5] Without application of the three-strikes statute, the guidelines range would have been 444 months to life. [CR Doc. 81 at ¶ 52].

[6] The three-strikes statute's residual clause, 18 U.S.C. § 3559(c)(2)(F)(ii), defines a "serious violent felony" as one that, "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense."

[7] At sentencing, the Court found, given the timing of the commission of and conviction for the second-degree murder offense and the drug conspiracy offense relative to each other, only one of those convictions could qualify as a predicate under the three-strikes statute. [See CR Doc. 104 at 25-26].

4

> chase exceeding – involving excessive speeds, going down two different interstates and side roads, ultimately leading to an accident where you were going up the wrong direction on an exit ramp.
>
> The number of – we are all very lucky that you are alive today and that others who were involved – that were involved in your accident are alive today. You could have killed yourself. You could have killed many others.
>
> Your criminal history is one that is unacceptable to the Court. Second degree murder charge speaks for itself. But after you committed the second degree murder charge, then you served time in federal prison for drug trafficking. Through those counts of conviction, you had an opportunity for training and rehabilitation, both in the state and federal systems, and you chose not to follow the rehabilitative route but you chose to continue on a life of crime. So the Court's concerned about deterring you from future criminal conduct. Obviously, Congress is concerned about deterring you from future criminal conduct.
>
> The Court believes the sentence it's going to impose reflects the seriousness of this offense. It's just punishment for the reckless criminal conduct you've committed, particularly based on your history and characteristics, your lengthy life of crime.

[CR Doc. 104 at 82-83]. The Court sentenced Petitioner to terms of life imprisonment on Counts One and Three and 60 months on Count Four, all to be served concurrently, and a consecutive term of life on Count Two. [Id. at 84; CR Doc. 92: Judgment]. Petitioner appealed, challenging among other things the finding that he was subject to mandatory life sentences under 18 U.S.C. § 3559(c)(1) and the reasonableness of his sentence. United States v. Moss, 445 Fed. App'x 632, 635 (4th Cir. 2011). The Fourth Circuit affirmed. Id. at 636.

On January 7, 2013, Petitioner filed a pro se motion to vacate under 28 U.S.C. § 2255 claiming he had received ineffective assistance of counsel. [CR Doc. 110]. The Court denied and dismissed Petitioner's motion on the merits. [CR Doc. 111].

On May 3, 2016, after having received authorization from the Court of Appeals for the Fourth Circuit to file a second or successive motion to vacate under § 2255, Petitioner, through

5

counsel, moved to vacate his criminal judgment to correct his sentence.[8] [CR Docs. 113, 113-1; CV Docs. 1, 2]. Petitioner argued that, in light of Johnson, his three life sentences "are illegal sentences that violate due process of law" because they rely on unconstitutionally vague residual clauses. [CV Doc. 1 at 1-2]. That is, Petitioner sought to extrapolate the holding in Johnson to similarly worded residual clauses: "The § 3559(c) residual clause suffers from the same infirmities that caused the Supreme Court to strike down the ACCA residual clause as unconstitutionally vague." [Id. at 7]. And because one of Petitioner's two previous violent felony predicates, North Carolina breaking and entering, only qualified as such under § 3559(c)'s residual clause, two of Petitioner's life sentences violate due process. [Id. at 10-11]. Petitioner asked the Court to vacate his sentences and resentence him without application of the "unconstitutionally vague three-strikes, ACCA, and Guidelines career-offender enhancements." [Id. at 2]. After multiple stays and the benefit of the Supreme Court's decision in Beckles v. United States, 580 U.S. 256, 137 S.Ct. 886 (2017), the Government responded to Petitioner's motion. [9/19/2016 & 5/18/2017 Text Orders; Doc. 10].

The Government argued in part that the Court must dismiss Petitioner's § 3559(c) challenge because he could not meet the requirements of 28 U.S.C. § 2255(h)(2). [CV Doc. 10 at 10]. In this regard, the Government argued that Petitioner had not shown that the Supreme Court

---

[8] The Fourth Circuit's authorization provided that Petitioner "has made a prima facie showing that the new rule of constitutional law announced in Johnson v. United States, 135 S.Ct. 2551 (2015), and held to apply retroactively to cases on collateral review by Welch v. United States, 136 S.Ct. 1257 (2016), may apply to his case." [CV Doc. 2]. In Johnson, the Supreme Court struck down the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague and held that enhancing a sentence thereunder violates due process. Johnson, 135 S.Ct. at 2563. Accordingly, under Johnson, a defendant who was sentenced to a statutory mandatory minimum term of imprisonment based on a prior conviction that satisfies only the residual clause of the "violent felony" definition is entitled to relief from his sentence. The Supreme Court has held that Johnson applies retroactively to claims asserted on collateral review. Welch, 136 S.Ct. at 1265.

6

had recognized or made retroactive on collateral review a "rule against increasing a defendant's sentence under the 'residual clause' of the three-strikes statute." [Id.]. The Government furthered argued that, "[t]he new rule that [Petitioner] proposes is not the rule announced in *Johnson*. That decision did not address 'residual clauses' generally…only 'that imposing an increased sentence under the residual clause *of the Armed Career Criminal Act* violates the Constitution's guarantee of due process.'" [Id. (internal citations omitted)]. And, "the Supreme Court did not make [Petitioner's] proposed rule retroactive in Welch," which "held only 'that *Johnson* is retroactive in cases on collateral review.'" [Id. at 11 (citation omitted)]. The Government also argued that any error in this Court's application of the three-strikes statute or the ACCA was harmless because "the record makes clear" that the Court would have imposed a life sentence in the absence of these provisions. [Id. at 22].

In June 2020, the Court denied Petitioner's second motion to vacate. [CV Doc. 13]. The Court held that, under Beckles, Johnson does not apply to the advisory sentencing guidelines, defeating Petitioner's challenge to his career offender status. The Court also held that the Supreme Court had not announced a rule against applying the three-strikes statute's residual clause to increase a defendant's sentence. [Id. at 4]. Finally, the Court held that any reliance by the Court on the ACCA's residual clause was harmless error because the Court "had ample reason to apply the ACCA's sentencing enhancements in the absence of the unconstitutional residual clause." [CV Doc. 13 at 5].

Petitioner appealed. [CV Doc. 15]. The Fourth Circuit granted a certificate of appealability only "on the issue of whether [Petitioner's] life sentence imposed under the Armed Career Criminal Act violates due process," but denied a certificate as to all other claims. [USCA Appeal: 20-7101, Doc. 22]. The appeal was stayed pending Borden v. United States, No. 19-5410, and

7

United States v. Littlejohn, No. 19-6089. [CV Docs. 18, 19]. On January 3, 2024, the Fourth Circuit granted the parties' joint motion to remand the proceedings to this Court. [CV Doc. 21]. In moving for remand, the parties noted that this Court dismissed Petitioner's challenge to the two life sentences under § 3559(c)(1)(a) "after the United States asserted a procedural defense under 28 U.S.C. § 2255(h)(2)" and that the Government has decided to withdraw that defense.[9] [CV Doc. 20-1 at 1, 5]. The parties argued that that defense is "waivable and forfeitable." [Id. at 6 (quoting Williams v. United States, 927 F.3d 427, 438 (6th Cir 2019))]. The parties asked the Fourth Circuit to remand the case so that this Court may consider Petitioner's motion to vacate without that defense. [Id. at 1, 6]. Petitioner also moved to expand the certificate of appealability to include his challenge to the three-strikes statute's residual clause and his claim that such a challenge satisfies the requirements of § 2255(h)(2). [USCA4 Appeal: 20-7101, Doc. 31]. The Fourth Circuit denied Petitioner's motion to expand the certificate of appealability and granted remand, vacating this Court's Order dismissing Petitioner's motion to vacate and ordering this Court to "decide whether any defense to [Petitioner's] petition is waivable." [CV Doc. 20 at 1].

On remand, the Government filed a supplemental response to Petitioner's motion to vacate, withdrawing its § 2255(h)(2) defense and asking the Court to nonetheless reject Petitioner's three-strikes challenge on harmless error grounds.[10] [CV Doc. 22; see CV Doc. 10 at 26]. Petitioner replied, arguing, in detail, that the Government's § 2255(h)(2) defense is waivable, that Petitioner's § 3559(c) challenge satisfies § 2244(b)(2)(A) in any event; that the Government cannot show that the Court's imposition of two mandatory life sentences was harmless error; and that the Court

---

[9] The Government's withdrew that defense because "the United States [had] informed Congress that it will acknowledge that the substantial-risk clause of § 3559(c)(2)(F)(ii) is unconstitutional." [CV Doc. 20-1 at 5].

[10] The Court will grant the Government's motion for leave to file this supplemental response.

should vacate Petitioner's "ACCA-based" life sentence under the sentencing package doctrine and because he now lacks three qualifying predicate convictions. [CV Doc. 25].

This matter is now ready for the Court's consideration on remand.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Remand Issue

The Fourth Circuit granted Petitioner authorization to file his successive § 2255 motion under 28 U.S.C. §§ 2244 and 2255(h)(2). [CV Doc. 2 at 2-3]. Section 2255(h)(2) requires that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain … a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Section 2255(h)(2) "incorporates the certification requirements in § 2244." In re Thomas, 988 F.3d 783, n.2 (4th Cir. 2021). See In re Graham, 61 F.4th 433, 439 (4th Cir. 2023) ("'[Section] 2255(h)'s reference to § 2244's certification requirement is much more sensibly read as referring to the portions of § 2244 that actually concern the certification procedures,' such as § 2244(b)(3).") (quoting Williams, 927 F.3d at 435); In re Vassell, 751 F.3d 267, 271 (4th Cir. 2014) ("Section(h) requires a court of appeals considering whether to authorize a second or successive §

9

2255 motion to follow the gatekeeping procedure 'provided in section 2244.'") (quoting 28 U.S.C. § 2255(h)).

Section 2244(b)(3), which sets out the procedures for such certification, provides:

> (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.
>
> (B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.
>
> (C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.
>
> …
>
> (E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

28 U.S.C. § 2244(b)(3).

Section 2244(b)(4) then requires:

> A district court shall dismiss any claims presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

Id. § 2244(b)(4).

These provisions create "two gates" that a "movant must get through" before a court may consider "the merits" of a successive § 2255 motion. Bennett v. United States, 119 F.3d 468, 470 (7th Cir. 1997); United States v. Winestock, 340 F.3d 200, 205 (4th Cir. 2003). The first gate requires a prisoner filing a successive § 2255 motion to obtain a certification from the court of appeals that the motion contains a "new rule of constitutional law, made retroactive to cases on

collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2244(b)(3), 2255(h)(2). Without this pre-filing authorization, "the district court lacks jurisdiction to consider an application" containing successive claims. Winestock, 340 F.3d at 205 (citing Evans v. Smith, 220 F.3d 306, 325 (4th Cir. 2000)). Here, the Fourth Circuit granted such authorization and allowed Petitioner's successive § 2255 motion to pass through this jurisdictional gate.

The second gate, which is expressed in 28 U.S.C. § 2244(b)(4), requires this Court to examine "each claim and dismiss those that are barred under § 2244(b) or § 2255[(h)]." Winestock, 340 F.3d at 205. That is, this Court must dismiss those claims that do not rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2244(b)(2)(A), 2255(h)(2). As noted, the Government initially invoked this second gate, arguing that Petitioner had not shown that the Supreme Court had recognized or made retroactive on collateral review a "rule against increasing a defendant's sentence under the 'residual clause' of the three-strikes statute." [CV Doc. 10 at 10]. The Government has now withdrawn that defense in light of its somewhat recent acknowledgment that the residual, or substantial risk, clause of the three-strikes statute is unconstitutional. The question on remand is whether this (or any) defense to Petitioner's motion is waivable. The parties agree that it is. [CV Docs. 22, 25].

In Winestock, the Fourth Circuit held that pre-filing authorization of successive § 2255 petitions "applies to the entire application," giving the district court jurisdiction over all claims in the application. 340 F.3d at 205. The district court then acts with subject matter jurisdiction over all claims presented therein, including those that do not meet the requirements of the second gate. See id. Despite this compelling guidance in Winestock, the Fourth Circuit has not expressly

11

decided whether the mandatory language of § 2244(b)(4) – requiring district courts "to dismiss any *claim*" presented in a Fourth Circuit-authorized successive habeas application that does not satisfy the requirements of § 2244 – is jurisdictional or a mandatory claims-processing rule. If jurisdictional, the requirement cannot be waived. Boechler, P.C. v. Comm'r of Internal Revenue, 596 U.S. 199, 203, 142 S.Ct. 1493, 1497 (2022). If a mandatory claims-processing rule, as argued by the parties here, it is subject to waiver. Hamer v. Neighborhood Hous. Servs. of Chi., 583 U.S. 17, 20, 138 S.Ct. 13, 17 (2017).

In Gonzales v. Thaler, 565 U.S. 134 (2012), the Supreme Court addressed whether the Court of Appeals had jurisdiction to adjudicate a habeas petitioner's appeal notwithstanding a defect in the certificate of appealability issued under 28 U.S.C. § 2253(c). Section 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), governs appeals in habeas corpus proceedings. Id. at 140. Subsection 2253(c) provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). In Gonzales, the Court of Appeals Judge granting the COA failed to "indicate" the issue on which the petitioner had made a substantial showing of the denial of a

12

constitutional right, as required by § 2253(c)(3). Id. at 142. The Supreme Court had to decide whether such defect deprived the Court of Appeals of jurisdiction to adjudicate the petitioner's appeal. Id. The Supreme Court reflected on the difference between "truly jurisdictional rules" and "nonjurisdictional 'claim-processing rules,' which do not … govern 'a court's adjudicatory authority.'" Id. at 141 (quoting Kontrick v. Ryan, 540 U.S. 443, 454-455, 124 S.Ct. 906 (2004)). In deciding that the COA defect did not deprive the Court of Appeals of jurisdiction, the Supreme Court recognized that:

> A rule is jurisdictional "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." Arbaugh v. Y & H Corp., 546 U.S. 500, 515, 126 S.Ct. 1235, 163 L.E.2d 1097 (2006). But if "Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." Id. at 516, 126 S.Ct. 1235.

565 U.S. at 141-42. The Supreme Court found that "the only 'clear' jurisdictional language in § 2253(c) appears in § 2253(c)(1)[,]" as it "establish[es] that 'until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.'" Id. at 142 (quoting Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029 (2003)). The Supreme Court offered that "it would be passing strange if, after a COA has issued, each court of appeals adjudicating an appeal were dutybound to revisit the threshold showing and gauge its 'substantial[ity]' to verify its jurisdiction." Id. at 143. Moreover, "[t]hat inquiry would be largely duplicative of the merits question before the court." Id.

Guided by Gonzales, the Sixth Circuit in Williams v. United States decided that § 2244(b)(4) did not "impose [a] jurisdictional bar" to "the court's ability to entertain the [petitioner's] clearly second-in-time—and potentially duplicative—motion for postconviction relief under § 2255." 927 F.3d 427, 432, 438-39 (6th Cir. 2019). Noting that while § 2244(b)(4) "could arguably be read as requiring post-authorization vigilance in a way that would connote

13

jurisdictionality," the Sixth Circuit concluded that it did not. Id. at 438. The Court observed that § 2244(b)(4) does not "'clearly state[ ]' a jurisdictional bar." Id. (citing Gonzalez, 565 U.S. at 141). Moreover, that dismissal thereunder is mandatory "does not change the nonjurisdictional character of this provision." Id. (citation and internal quotation omitted). "Rather, '[i]f properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited.'" Id. (quoting Hamer, 583 U.S. at 20, 138 S.Ct. at 17).

This Court agrees with the Sixth Circuit's reasoning in Williams and finds that § 2244(b)(4) is a non-jurisdictional, mandatory claims-processing rule. To be sure, § 2244(b)(3)(A) allows an entire successive habeas corpus "application" to be filed in the district court after obtaining authorization, while § 2244(b)(4) requires individual "claims" therein to be dismissed if not meeting the requirements of § 2244. See Winestock, 340 F.3d at 205. As such, in addition to the lack of clear jurisdictional language, § 2244(b)(4)'s plain language signals a difference from the scope and application of § 2244(b)(3)(A) and supports that it is a claim-processing rule. See id. Further, it would be "passing strange" to require the district court – after the court of appeals has "authoriz[ed]" it to "consider" the "second or successive application" – to "revisit the threshold showing" before addressing the merits of the claim. Gonzales, 565 U.S. at 143. Moreover, such a process would be contrary to § 2244(b)(3)(E)'s proscription against appealing the court of appeals' authorization and would effectively give the district court the power of appellate review thereover.

Because Petitioner passed the first jurisdictional gate when the Fourth Circuit granted authorization for him to file a successive motion to vacate under § 2255 and because the second gate expressed in § 2244(b)(4) is not jurisdictional and, therefore, waivable, the Court has jurisdiction over the entire remanded habeas proceeding. See Thompson, 585 F.Supp.3d 809, n.2

14

(E.D. Va. 2022). The Court will, therefore, revisit Petitioner's motion to vacate under the calculus presented here now.

B.  **Mandatory Life Sentences**

In his original motion to vacate, Petitioner argued that his mandatory life sentences imposed under the three-strikes statute violate due process because § 3559(c)'s residual clause is unconstitutionally vague under Johnson and one of Petitioner's two predicate convictions, North Carolina breaking and entering, only so qualified under the residual clause. [CV Doc. 1 at 6-11]. Now, the United States has conceded that the residual clause of § 3559(c) is unconstitutionally vague. As such, the Court must consider whether the imposition of two life sentences thereunder is harmless error. The parties disagree on this point. [CV Doc. 22 at 7; see CV Doc. 10 at 20-25; CV Doc. 25 at 14-18].

In 2013, the Fourth Circuit adopted the harmless error standard for collateral review set forth in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993), in § 2254 cases, rather than the standard of review for harmless error on direct appeal in Chapman v. California, 386 U.S. 24, 87 S.Ct. 824 (1967) (holding that on direct appeal, an error must be harmless beyond a reasonable doubt). United States v. Smith, 723 F.3d 510, 512 (4th Cir. 2013). Under the Brecht version of the harmless error test, relief should be granted in a § 2255 case where the constitutional error had a "substantial and injurious effect or influence" in determining the jury's verdict. See id. (quoting Brecht, 507 U.S. at 623).

> The substantial and injurious effect standard used to determine harmlessness on habeas appeal comes from the Supreme Court's decision in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). That case instructs us to look to "what effect the error had or reasonably may be taken to have had upon the jury's decision." Id. at 764, 66 S.Ct. 1239. "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand."

15

> Id. However, "[i]f the federal court is 'in grave doubt' about whether the trial error had a 'substantial and injurious effect or influence' on the verdict and therefore finds itself 'in virtual equipoise' about the issue, the error is not harmless." Lawlor v. Zook, 909 F.3d 614, 634 (4th Cir. 2018) (holding that state court's failure to admit mitigating evidence regarding defendant's ability to adjust to prison was not harmless when the jury expressed confusion over whether and how it could consider such evidence).

Barnes v. Thomas, 938 F.3d 526, 533 (4th Cir. 2019). The Government has the burden of establishing harmless error on post-conviction review. O'Neal v. McAninch, 513 U.S. 432, 439 (1995). In the sentencing context, "the party defending the ruling below (here, the Government), bears the burden of demonstrating that the error was harmless, i.e. that it 'did not have a "substantial and injurious effect or influence"' on the result." United States v. Lynn, 592 F.3d 572, 585 (4th Cir. 2010) (quoting United States v. Curbelo, 343 F.3d 273, 278 (4th Cir. 2003) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The Government points to United States v. Shrader and United States v. McDonald as setting the relevant standards.

> When a defendant challenges the application of a mandatory-minimum penalty, the Fourth Circuit has held that any error is harmless if his ultimate sentence is within the "cumulative maximum sentence" for all of his "counts of conviction," United States v. Shrader, 675 F.3d 300, 315 (4th Cir. 2012); and "the record makes clear that the district court" would have imposed "the same sentence" in any event; and the "sentence would be reasonable." United States v. McDonald, 850 F.3d 640, 643-44 (4th Cir. 2017).

[CV Doc. 10 at 21]. In this regard, the Government argues that any error in the Court's application of the three-strikes statute was harmless because "[t]he life sentence that this court imposed would be within [Petitioner's] 'cumulative maximum sentence'" (even if Petitioner prevailed on all claims presented in his successive § 2255 motion), and "'the record makes clear' that this Court would have imposed 'the same sentence' even if the statutory mandatory minimum penalties that

[Petitioner] challenges did not apply." [CV Doc. 10 at 22 (citations omitted)]. The Government argues that because the Court had the authority to impose a life sentence on Petitioner's § 924(c) conviction, regardless of the three-strikes law or the ACCA, the life sentence imposed would remain within the cumulative maximum sentence for all Petitioner's counts of conviction. [Id. at 22]. Moreover, the Government argues that "[t]he record makes clear that this Court would have imposed the same life sentence" without the three-strikes statute or the ACCA. [Id.]. On this issue, the Government contends that the Court "took care to discuss on the record the proper application of the statutory 'sentencing factors' that this Court would have been required to consider 'if a statutory minimum didn't apply,'" and noted that "it shared Congress's 'concern[] about deterring [Petitioner] from future criminal conduct.'" [Id. at 23 (citing CR Doc. 104 at 82-84)]. The Government notes that "[t]he Court explained that it 'believed[d]' the sentence it imposed 'reflects the seriousness' of [Petitioner's] offense and that it was 'just punishment for the reckless criminal conduct' [Petitioner] has 'committed, particularly based on' his 'history and characteristics' and his 'lengthy life of crime.'" [Id. (citing id. at 83)]. The Government also reminds the Court that Petitioner's life sentence "would be firmly within the advisory guideline range of 444 months to life that [Petitioner] concedes would apply if the mandatory-minimum penalties did not." [Id. at 24-25].

  The Court is not persuaded. Even if the collective harmless error standard in <u>Shrader</u> and <u>McDonald</u> applied here, the sentencing record does not "make clear" that the Court would have imposed the same life sentence absent the three-strikes statute and consequent guidelines-recommended life sentence. Rather, the record reflects that the Court understood that it was operating without any discretion in imposing life sentences on Counts One and Two [CR Doc. 104 at 76-77, 81-82 ("The Court must follow the mandate of Congress.")] and that it tacitly declined

17

the Government's request to make alternative sentencing findings that a life sentence was nonetheless appropriate based on Petitioner's career offender status absent application of the three-strikes statute [see id. at 68-69]. Moreover, in the face of mandatory life sentences, Petitioner's attorney presented no mitigating evidence at sentencing. [CR Doc. 104 at 77]. At the point of the sentencing hearing where the Court allowed Petitioner's counsel to argue "as to the appropriate sentence in this case," Petitioner's attorney said only, "Your honor, the sentence is life. I don't – I'll allow Mr. Moss to say whatever he'd like to say." [Id.]. Petitioner then declined to make any statement to the Court. [Id.]. While the Court did of course discuss sentencing factors, it acknowledged doing so "because they are very important in explaining the rationale for … why I think Congress is giving you such a severe sentence." [Id. at 82]. As such, the Court cannot say from the record that the same life sentence would have been imposed without the three-strikes statute or that the life sentence necessarily "effectuated the trial court's sentencing intent." See Shrader, 675 F.3d at 315. Rather, the Court's doubts about whether the error in applying the three-strikes statute to Petitioner's sentences on Counts One and Two had a "substantial and injurious effect or influence" on the outcome are sufficiently grave to find such error not harmless. See Barnes, 938 F.3d at 533. The Court, therefore, will vacate the Petitioner's sentences on Counts One and Two on this ground so that he may be resentenced without the life sentences mandatory under the three-strikes statute.[11]

### C. Sentencing Package Doctrine

Petitioner argues that the Court should apply the sentencing package doctrine and resentence Petitioner on all counts of conviction. [CV Doc. 1 at 25-27; CV Doc. 12 at 8-10].

---

[11] The Court declines to address Petitioner's claim that his ACCA-based sentence violates due process here and, instead, turns to the sentencing package doctrine.

Pursuant to that doctrine, when a court of appeals vacates a sentence and remands for resentencing, "the sentence becomes void in its entirety and the district court is free to revisit any rulings it made at the initial sentencing." United States v. Ventura, 864 F.3d 301, 309 (4th Cir. 2017) (internal quotation marks and citations omitted). That is because "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan," and that if some of the counts are vacated, "the judge should be free to review the efficacy of what remains in light of the original plan." Id. at 309 (quoting United States v. Townsend, 178 F.3d 558, 567 (D.C. Cir. 1999)). A district court also has authority to employ the sentencing package doctrine when it vacates some but not all of his counts of conviction under § 2255. United States v. Smith, 115 F.3d 241, 245-48 (4th Cir. 1997).

Here, having found that the error in imposing life sentences on Counts One and Two was not harmless, and because the unconstitutional life sentences on these counts determined the guideline range applied in Count Three,[12] the Court will apply the sentencing package doctrine. The Court concludes, given all the circumstances in this case, including those discussed supra relative to harmless error, it makes more sense to vacate Petitioner's sentence and holistically "revisit any rulings it made at the initial sentencing" to achieve the appropriate sentencing package at resentencing. Ventura, 864 F.3d at 309 (citation omitted). The Court, therefore, will order under the sentencing package doctrine that Petitioner's sentence be vacated and that a resentencing be conducted, noting that Petitioner has already served his custodial sentence on Count Four. The

---

[12] That is, without the mandatory life sentences under the three-strikes statute, the guidelines range on Count Three would have been 444 years to life, not life imprisonment plus life, as found by the Court. [See CR Doc. 104 at 77].

Court notes, in so holding, that Petitioner nonetheless remains subject to the possible imposition of a life sentence in this matter.

## IV.   CONCLUSION

For these reasons, the Government may waive its non-jurisdictional defense to Petitioner's authorized, successive § 2255 motion; the error in imposing two life sentences under the three-strikes statute was not harmless; and the Court will vacate Petitioner's sentence and resentence him under the sentencing package doctrine.

### ORDER

**IT IS THEREFORE ORDERED** that Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **GRANTED** in accordance with the terms of this Order and the Court's Order [Doc. 13] is hereby **VACATED**.

**IT IS FURTHER ORDERED** that Petitioner's sentence is hereby **VACATED** and Petitioner shall be resentenced in accordance with this Order.

**IT IS FURTHER ORDERED** that the Government's Motion for Leave to File Supplemental Brief [Doc. 23] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court provide copies of this Order to the U.S. Bureau of Prisons, U.S. Marshals Service, and the U.S. Probation and Pretrial Services Office.

The Clerk is respectfully instructed to schedule a hearing for Petitioner's resentencing.

**IT IS SO ORDERED.**   Signed: April 22, 2024

_____
Frank D. Whitney
United States District Judge